IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ELAINE T. HUFFMAN and<br>CHARLENE S. SANDLER,<br><br>    Plaintiffs,<br><br>vs.<br><br>CREDIT UNION OF TEXAS,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 11-0022-CV-W-ODS<br>)<br>)<br>)<br>) |

ORDER AND OPINION GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending is Defendant's Motion for Summary Judgment (Doc. # 90). The Motion is granted.

I. BACKGROUND

Plaintiffs borrowed money to finance the purchase of cars pursuant to a program offered by a company called Centrix. Plaintiffs allege that hidden fees and charges for default insurance and other insurance premiums were not disclosed when the loans were made. The loans were ultimately purchased by Defendant, but Centrix continued servicing the loans on Defendant's behalf as its agent. Plaintiffs' cars were repossessed for nonpayment and subsequently sold.

On November 24, 2010, Plaintiff filed a Class Action Petition in the Circuit Court of Ray County, Missouri. Plaintiff alleged causes of action under the Missouri Commercial Code (Count I), the Missouri Merchandising Practices Act ("MMPA") (Count II), and for Conversion (Count III). On October 20, 2011, this Court dismissed Plaintiffs' claims under Count I and Count III because they were time-barred. The Court left for another day "a determination as to whether any (and which) alleged wrongful acts occurred outside the five year limitation period" applicable to the MMPA claims. Accordingly, the

Court denied Defendant's Motion to Dismiss with respect to Count II because it could not decide on the pleadings whether Count II should be dismissed. Now that discovery and depositions have taken place, the Court is now able to make a ruling on Plaintiffs' MMPA claims. The Parties discuss many things in their summary judgment briefs, but the Court will only address those facts that it believes are relevant to the statute of limitations inquiry.

### A. Plaintiff Huffman

On January 10, 2003, Plaintiff Huffman took out a loan to finance the purchase of a car. DSOF, ¶ 7. In connection with the loan. Huffman executed a Retail Installment Contract and Security Agreement. DSOF, ¶ 8. The loan documents included an itemization of the amount financed, which was more than the price of the car. Def's Ex. F. The funding for Huffman's loan was provided by Defendant. DSOF, ¶ 8. Defendant obtained default insurance and other insurance in connection with Huffman's loan. DSOF, ¶ 9. Huffman stopped making payments on her loan some time later. DSOF, ¶ 10. On July 12, 2004, Huffman received a letter informing her of her delinquency. DSOF, ¶ 11. The Record does not reflect that Huffman did anything after receiving the letter. Huffman's car was repossessed on January 17, 2005. DSOF, ¶ 13. That same day, a pre-sale notice was sent to Huffman notifying her of her right to redemption. DSOF, ¶ 15. However, Huffman did not do anything to preserve her right of redemption. Specifically, Huffman did not contact an attorney at that time. DSOF, ¶ 17. On March 30, 2005, Huffman received notice that her car was sold and also indicated the deficiency amount owed. DSOF, ¶ 21. There was no further communication from Defendant to Huffman after March 30, 2005. DSOF, ¶ 24-25.[1] On May 18, 2005, Defendant received a default insurance payment for the deficiency on Huffman's car. DSOF, ¶ 27.

---

[1] Plaintiff Huffman attempts to controvert this fact, but the Record reflects that Plaintiff Huffman responded "No" when asked in a deposition whether she recalled ever receiving any other communications or any communications at all from the Credit Union of Texas after March 30 of 2005. Def's Ex. E. (Doc. #91-5) (Huffman Tr.), at 188:19-22; 219:4-7.

Defendant has not made any attempts to collect the deficiency amounts from Huffman. DSOF, ¶ 54.

Plaintiff Huffman later testified that she received a letter and accompanying check for $100 from Centrix sometime around February 2006. DSOF, ¶ 23. However, Plaintiff Huffman does not have the February 2006 letter and accompanying check that she allegedly received. DSOF, ¶ 26.

### B. Plaintiff Sandler

In October 2002, Plaintiff Sandler took out a loan to finance her car. DSOF, ¶ 33. In connection with the loan, Sandler executed a Retail Installment Contract and Security Agreement dated October 12, 2002. DSOF, ¶ 34. The loan documents included an itemization of the amount financed, which was more than the price of the car. Def's Ex. O. The funding for Sandler's loan was provided by Defendant. DSOF, ¶ 35. Sandler stopped making payments on her loan sometime later. DSOF, ¶ 39. Sandler's car was repossessed on January 21, 2005. DSOF, ¶ 40. Plaintiff Sandler felt harmed when her car was repossessed, but she did not contact an attorney at that time. DSOF, ¶ 41. Sandler was sent a pre-sale notice on January 21, 2005. DSOF, ¶ 42. On March 31, 2005, Sandler was sent a Notice of Sale letter notifying her that her car had been sold. DSOF, ¶ 43. The letter also informed her of the amount the car was sold for and the deficiency balance remaining on her loan. DSOF, ¶ 43. Sandler did not do anything—such as attempt to contact an attorney—after receiving the March 31, 2005 letter. DSOF, ¶ 45. Nothing in the Record indicates that Defendant contacted Plaintiff after she received the March 31, 2005 letter. In connection with Sandler's loan and subsequent repossession and sale, Defendant received a VSI insurance payment on February 18, 2005, as well as default insurance payment on May 18, 2005. DSOF, ¶ 49-50. Defendant has not made any attempts to collect the deficiency amounts from Sandler. DSOF, ¶ 54.

Sandler testified that around February 2006, she received a letter with a check for $100 from Centrix. DSOF, ¶ 46. When asked if she read the February 2006 letter she

3

allegedly received from Centrix, Sandler replied: "I probably did, but was so excited about page 2 [the check] that I didn't read—you know what I'm saying? It was like, let's go to the bank and then go out to eat." DSOF, ¶ 47. Sandler has not been able to locate a copy of the $100 check she claims to have cashed. DSOF, ¶ 48.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III. DISCUSSION

Plaintiffs' claims for violations for the MMPA are time-barred as a matter of law and there is no basis to toll the limitations period. The MMPA prohibits "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment,

4

suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise . . . ." Mo. Rev. Stat. § 407.020.1. Under Missouri law, the limitation period for a MMPA claim is five years. Mo Rev. Stat. § 516.120; *Owen v. General Motors Corp.*, 533 F.3d 913, 921 n.6 (8th Cir. 2008) (five-year limitations period in § 516.120 applies to MMPA claims); *Glen v. Fairway Independent Mortg. Corp.*, 265 F.R.D. 474 (E.D. Mo. 2010) ("The five-year limitations period provided by Mo. Rev. Stat. § 516.120(2) applies to plaintiffs' MMPA claim.").[2] This period begins to run from the time "a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 582 (Mo. 2006) (en banc); *see also State ex. rel. Old Dominion Freight Line, Inc. v. Dally*, 369 S.W.3d 773, 778 (Mo. Ct. App. 2012) ("[T]he test is not when a reasonable person *knows* that damages have occurred, but is when that person would have notice of a *potentially* actionable injury.").

Here, on January 10, 2003, Huffman executed her Retail Installment Contract and Security Agreement and on October 12, 2002, Sandler did the same. Plaintiffs' causes of action accrued on those dates. The loan documents disclosed the amount financed, which was more than the price of the cars. At this point, any concern Plaintiffs had about the amount could have been raised. A reasonable person would have been put on notice than an injury may have occurred and would have inquired why the amount financed differed from the price of the car. Because Plaintiffs' causes of action accrued more than five years prior to filing the state-court Petition, Count II is time-barred.

Plaintiffs also cite to other actions by Defendant that involved alleged MMPA violations, including the repossession of Plaintiffs' cars and the sending of pre and post-sale communications that included a description of redemption rights. Petition, ¶

---

[2] Plaintiffs argue that the ten-year limitation provision of section 516.120(5) applies. This argument is without merit. The Eighth Circuit has stated that a MMPA claim is subject to the five-year statute of limitations set out in Mo. Rev. Stat. § 516.120. *Owen v. General Motors Corp.*, 533 F.3d 913, 921 n.6 (8th Cir. 2008); *see also Rashaw v. United Consumers Credit Union*, 685 F.3d 739, 745 (8th Cir. 2012).

5

86.  However, assuming without deciding that Plaintiff's MMPA claims did not begin until their cars were repossessed, or when Defendant sent pre and post-sale communications, these claims are also time-barred.   Huffman's car was repossessed and notice was given on January 17, 2005.   Sandler's car was repossessed and notice was given on January 21, 2005.   Huffman's Notice of Sale letter was sent on March 30, 2005, and Sandler's Notice of Sale letter was sent on March 31, 2005.   Neither Plaintiff investigated the matter further.   Defendant never contacted Huffman, nor attempted to collect the deficiency on Plaintiff's loan, after March 30, 2005.   Likewise, Defendant never contacted Sandler after March 31, 2005.   The last debt collection attempts took place more than five years before this action was filed, when Plaintiffs received their Notice of Sale letters.   Further, there is no evidence that a continuing violation occurred because there was no communication from Defendant to Plaintiffs after the date they received their Notice of Sale letters.   A reasonable person would have put on notice about a potential actionably injury at the time of the repossession and the pre and post-sale communications

Plaintiffs cannot establish an MMPA violation regarding the $100 check that they allegedly received from Centrix and the accompanying letter.   First, Centrix acted as an agent for its lender, Defendant.   However, this check was sent in Centrix's own capacity, not as Defendant's agent.   Second, nothing in the Record to show that Plaintiffs received the letters or the checks.   The only support for the existence of the checks is Plaintiffs' own self-serving testimony, which is insufficient to defeat summary judgment.   *See Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006); *see also Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.")

Finally, no basis exists to toll the limitations period.   Plaintiffs argue the statute of limitations should be tolled because of certain disclosure requirements of federal and Missouri law.   Specifically, Plaintiffs point to the Truth in Lending Act ("TILA") and Missouri's Motor Vehicle Time Sales Act, sections 365.010-365.160.   However, Plaintiffs are not bringing a TILA action or a cause of action under chapter 365.   Instead, Plaintiffs

6

brought a cause of action under Missouri Merchandising Practices Act, section 407.020. Additionally, there is no basis under the doctrine of fraudulent concealment to toll the statute of limitations. At the time Plaintiffs executed their contracts, by the exercise of ordinary care, they could have questioned and discovered why there were extra fees. *See Kueneke v. Jeggle*, 658 S.W.2d 516, 518 (Mo. Ct. App. 1983) (stating that a party arguing that a statute of limitations should be tolled based on fraudulent concealment "is deemed cognizant of or conversant with facts that should have been known and is held to have known facts that he could, by exercise of ordinary care commensurate with the circumstances, discover by due diligence or other means within his power"). Because there is no basis for tolling the statute of limitations, Plaintiffs' MMPA claims are time-barred, and summary judgment in favor of Defendant is appropriate.

## IV. CONCLUSION

The Court finds that Plaintiffs' MMPA claims are time-barred. Accordingly, Defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

DATE: March 18, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT